UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **ROBERT C. RESZLER,** | : | Civil Action No. 06-586(AET) |
| **Plaintiff,** | : | |
| v. | : | **MEMORANDUM OPINION** |
| **TRAVELERS PROPERTY CASUALTY INSURANCE, et al.,** | : | |
| **Defendants.** | : | |

**HUGHES, U.S.M.J.**

This matter is before the Court upon the Motion of Plaintiff Robert C. Reszler ("Plaintiff") to Amend the Complaint. Defendant Travelers Indemnity Company ("Travelers") opposes the motion. In July 2003, Plaintiff was struck head on by a vehicle owned by Amber Beech Farm, Inc. and driven by Holly M. Binder. Amber Beech Farm's State Farm Insurance policy covered the accident and tendered $100,000, the full value of the policy. Travelers, through its insurance brokers Genzler & Smith Associates and Kennel Pak, Inc., provided an excess liability insurance policy to Amber Beech Farm. Plaintiff filed an action for declaratory judgment asserting that the Travelers policy covered the cost of the injuries he suffered in excess of the State Farm policy. On February 8, 2006, Travelers removed the action to this Court based on diversity. On October 23, 2006, Travelers was granted summary judgment when the Court held that Travelers' excess policy did not provide coverage for Plaintiff's underlying claim because the State Farm policy was not listed on the Declarations as required by the Travelers policy.

Plaintiff now moves to assert a claim against Travelers on an errors and omissions theory of liability which in essence would hold Travelers liable to Plaintiff for assuming management of the

excess policy and then failing to meet its obligations to properly insure Amber Beech. The Court reviewed the written submissions of the parties and conducted oral argument on April 2, 2007. For the reasons that follow, Plaintiff's Motion to Amend the Complaint is granted.

**I.      BACKGROUND AND PROCEDURAL HISTORY**

This case involves a motor vehicle accident that took place on July 3, 2003 in Hamilton Township, New Jersey. (Slaughter Cert. at ¶ 3). Defendant Holly Binder ("Ms. Binder"), driving a vehicle owned by Amber Beech Farms, crossed over the center-line divider into opposing lanes of traffic and struck Plaintiff head on. Id. As a result, on July 29, 2004, Plaintiff filed a Complaint against Holly M. Binder, Amber Beech Farm, Inc., and several fictitiously pled parties in the Superior Court of New Jersey, Mercer County, alleging that Ms. Binder acted negligently in the operation of the vehicle and that Amber Beech was liable as her employer. (Id. at ¶ 4; Travelers' Opp. Br. at 1).

Prior to the accident, State Farm Mutual Insurance Company had issued an automobile liability policy to Amber Beech Farms, Inc., an entity incorporated and located in Pennsylvania. (Travelers' Opp. Br. at 1). The policy covered the 2000 Ford Ranger pickup truck that was involved in the accident and had liability limits of $100,000.00. Id. Plaintiff asserted that the liability limits of the State Farm policy were insufficient to compensate him for the injuries he suffered in the accident. Id. at 2. As the matter progressed, Plaintiff discovered that Amber Beech Farm had a Commercial Excess Liability Insurance Policy. (Slaughter Cert. at ¶ 5). The excess policy had been issued to Amber Beech through Defendant Kennel Pak, Inc. (Travelers' Opp. Br. at 2). Plaintiff filed a declaratory action on September 8, 2005, in the Superior Court of New Jersey, seeking a Court Order declaring that coverage from the excess policy was applicable to this matter. (Slaughter

Cert. at ¶ 6). The declaratory action was then removed to this Court by Travelers, a Connecticut corporation, based on diversity of citizenship. Id.

Travelers filed a Motion for Summary Judgment arguing that the underlying motor vehicle policy was not listed in the schedule to the policy as required for coverage, and therefore, Travelers was not required to provide excess coverage pursuant to the policy. Id. at ¶ 7. While the summary judgment motion was pending, Plaintiff filed a Motion to Amend his Complaint on September 18, 2006 to add Kennel Pak, Inc. and Genzler & Smith Associates, Inc. as defendants, asserting an errors and omissions theory of liability. (See Dkt. no. 06-586, entry no. 20). Kennel Pak and Genzler & Smith Associates, Inc. are Pennsylvania corporations. (Travelers' Opp. Br. at 2). Kennel Pak, a subsidiary of Genzler & Smith Associates, was the insurance broker of the Travelers general liability and excess insurance policies issued to Amber Beech. Id. The Court granted Plaintiff's Motion to Amend on October 16, 2006, and Plaintiff filed an Amended Complaint on October 18, 2006. (See Dkt. no. 06-586, entry no. 23 and 24).

Travelers Motion for Summary Judgment was granted on October 23, 2006, dismissing Plaintiff's claim for declaratory judgment. (See Dkt. no. 06-586, entry no. 28). Subsequently, Kennel Pak, Inc. and Genzler & Smith Associates, Inc. filed an Answer to Plaintiff's Complaint and a Cross-Claim against all Defendants seeking contribution and indemnification on November 30, 2006. (See Dkt. no. 06-586, entry no. 31).

Plaintiff filed the present Motion to Amend the complaint on February 1, 2007. (See Dkt. no. 06-586, entry no. 37). Travelers filed a Brief in opposition to Plaintiff's motion on February 23, 2007. (See Dkt. no. 06-586, entry no. 39). In his motion, Plaintiff seeks to amend the complaint to add Travelers as a party defendant in this matter in an errors and omissions theory of liability.

(Slaughter Cert. at ¶ 2). Plaintiff asserts that Initial Disclosures by Defendants Kennel Pak, Inc. and Genzler & Smith Associates, Inc. reveal that Travelers had assumed service obligations with respect to the excess policy. Id. at ¶ 10. Travelers argues in opposition that the claim Plaintiff proposes to add against Travelers would be futile under Pennsylvania law and therefore, could not withstand a motion to dismiss. (Travelers' Opp. Br. at 3). Plaintiff argues in reply that New Jersey law applies and allows the proposed amendment. (Pl.'s Reply Ltr. Br. at 2).

## II.  DISCUSSION

Plaintiff seeks leave to amend the complaint to add Travelers as a party defendant in this matter in an errors and omissions theory of liability. (Slaughter Cert. at ¶ 2). Plaintiff asserts that on December 21, 2006, his counsel was served with Initial Disclosures by Defendants Kennel Pak, Inc. and Genzler & Smith Associates, Inc. which included documents that imply that Travelers took over policy service from Genzler and Smith Associates and Kennel Pak. Id. at ¶ 17. Plaintiff argues that "it is inferable" that Travelers had assumed service obligations with respect to the policy in question and failed to meet its obligations to Plaintiff. (Travelers' Opp. Br. at 3).

Travelers argues in opposition that the claim Plaintiff proposes to add against Travelers could not withstand a motion to dismiss and therefore would be futile. Id. Travelers contends that any claims regarding the provision of coverage advice to Amber Beech must be governed by Pennsylvania law because (1) Kennel Pak, Inc., Genzler & Smith Associates, Inc., and Amber Beech are all Pennsylvania citizens, (2) the Travelers policy was issued in Pennsylvania, and (3) the State Farm auto policy that covered the vehicle driven by Ms. Binder was issued in Pennsylvania and covered a vehicle registered in Pennsylvania. Id. at 5. Travelers argues that "Plaintiff's proposed claim against Travelers is not cognizable under Pennsylvania law." Id.

Plaintiff argues in reply that New Jersey conflict of law standards should be applied since this case and the underlying case were brought in New Jersey under New Jersey law. (Pl.'s Reply Ltr. Br. at 2). Specifically, Plaintiff argues that New Jersey applies the "government interest" test which requires application of the law in the state with the greatest interest in the issues raised, the parties, or the transaction. Id. at 3. Plaintiff further argues that "unlike in Pennsylvania, in New Jersey a person injured by the negligence of an operator of a motor vehicle has the right to initiate a lawsuit against an insurance carrier . . . which has alleged committed an 'errors and omissions' offence that has inured to the detriment of the injured person even though he/she is not named in the insurance contract." Id. at 5. Plaintiff contends that New Jersey has a greater interest in this litigation than Pennsylvania because of New Jersey's strong policy in favor of assuring that its citizens who have been injured in motor vehicle accidents as the result of the negligence of another receive just and adequate compensation for their damages. Id. at 5.

### A.        *Federal Rule of Civil Procedure 15(a)*

Federal Rule of Civil Procedure 15 provides that leave to amend a Complaint "shall be freely given when justice so requires." FED. R. CIV. P. 15(a). The decision whether to grant or deny a motion for leave to amend "rests within the sound discretion of the district court." Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644, 654 (3d Cir. 1998). See Foman v. Davis, 371 U.S. 178, 182 (1962). The Court can deny a motion to amend if (1) there has been undue delay, bad faith, or dilatory motive, (2) if the amendment would be futile, or (3) if there would be prejudice to the other party. Hill v. City of Scranton, 411 F.3d 118, 134 (3d Cir. 2005); Jablonski v. Pan Am. World Airways, Inc., 863 F.2d 289, 292 (3d Cir. 1988). In the present matter, Travelers does not claim that Plaintiff's proposed amendment has been brought with undue delay, bad faith, or dilatory motive.

Similarly, Travelers does not argue that it would be prejudiced if Plaintiff's motion were granted. Travelers' only argument is that Plaintiff's proposed claim would not survive a motion to dismiss and is therefore futile.

### 1.     Undue Delay, Bad Faith, or Dilatory Motive

The Third Circuit has held that "[t]he passage of time, without more, does not require that a motion to amend a complaint be denied; however, at some point, the delay will become 'undue,' placing an unwarranted burden on the court, or will become 'prejudicial,' placing an unfair burden on the opposing party." Adams v. Gould Inc., 739 F.2d 858, 868 (3d Cir. 1984) (citing Chitimacha Tribe of Louisiana v. Harry L. Laws Co., 690 F.2d 1157, 1163 (5th Cir. 1982)).  The analysis of undue delay and bad faith require that the Court focus on the plaintiff's motives for not amending the complaint earlier.  Id. at 868.

In the present matter, Travelers does not argue that Plaintiff's motion to amend is the result of undue delay, bad faith, or dilatory motive.  Similarly, the Court finds no basis for a finding of undue delay, bad faith, or dilatory motive on the part of Plaintiff.  Although Plaintiff's motion was filed after Travelers' motion for summary judgment was granted, it also was filed after Plaintiff received Initial Disclosures from Kennel Pak, Inc. and Genzler & Smith, Associates, Inc.  Plaintiff asserts that it was information learned in the Initial Disclosures that prompted the present motion. The Court has no evidence to the contrary, and therefore, finds that Plaintiff's motion is not brought after undue delay, in bad faith, or with dilatory motive.

### 2.     Prejudice

The Third Circuit Court of Appeals regards the potential of prejudice to the nonmoving party as the "touchstone for the denial of the amendment" pursuant to Federal Rule of Civil Procedure

6

15(a). Lorenz v. CSX Corp., 1 F.3d 1406, 1414 (3d Cir. 1993) (quoting Cronell & Co., Inc. v. Occupational Safety and Health Review Comm'n, 573 F.2d 820, 823 (3d Cir. 1978)). The nonmoving party has the burden of showing unfair disadvantage or deprivation will result if the amendment is allowed. In re Bristol-Myers Squibb Sec. Litig., 228, F.R.D. 221, 228 (D.N.J. 2005). A finding of prejudice involves a "serious impairment of the nonmovant's ability to present its case," whereas undue prejudice is found when the nonmoving party shows it "would be disadvantaged or deprived of the opportunity to present facts or evidence that it would have offered." Id. (citing Harrison Beverage Co. v. Dribeck Importers, Inc., 133 F.R.D. 463, 468 (D.N.J. 1990)).

In the present matter, Travelers does not contend that it would be prejudiced if Plaintiff's motion to amend were granted. On October 16, 2006, the Court granted Plaintiff's motion to amend the complaint to add Kennel Pak, Inc. and Genzler & Smith Associates as defendants. (See Order dated October 16, 2006). As a result, the parties have only recently exchanged initial disclosures. In addition, discovery is set to end on April 27, 2007. (See January 26, 2007 Scheduling Order). Therefore, the Court finds no prejudice to Travelers if Plaintiff's motion to amend were granted.

**3. Futility**

"'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." In re Burlington Coat Factory Securities Litig., 114 F.3d 1410, 1434 (3d Cir. 1997); see also Onyiuke v. New Jersey State Supreme Court, 435 F. Supp. 2d 394, 403 (D.N.J. 2006) ("An amendment is considered futile 'if the amendment will not cure [any] deficiency in the original complaint or if the amended complaint cannot withstand a motion to dismiss.'"). Therefore, the same standard for legal sufficiency applies in determining futility and in evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Shane v. Fauver, 213 F.3d 113, 115 (3d Cir.

7

2000) ("In assessing 'futility,' the District Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)."); see also Lesser v. City of Cape May, 110 F. Supp. 2d 303, 331 (D.N.J. 2000).

In analyzing whether a complaint fails to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), "a court must reasonably read the complaint and decide whether the plaintiff has pled a cognizable cause of action entitling it to relief." Onyiuke, 435 F. Supp. 2d at 404. For the purposes of this analysis, a court "accepts as true all of the well-pleaded factual allegations within the complaint and any reasonable inferences drawn therefrom." Id. If the proposed amendment is not clearly futile, then denial of the motion to amend is improper. Harrison Beverage Co. v. Dribeck Importers, Inc., 133 F.R.D. 463, 468 (D.N.J. 1990).

    a.    **Choice of Law Analysis**

In the present case, both New Jersey and Pennsylvania law are implicated. Therefore, the Court must conduct a conflict of laws analysis before determining if Plaintiff's proposed amended claim would be futile. A Court sitting in diversity is "constrained to apply New Jersey's law regarding choice-of-law in the first instance." Maertin v. Armstrong World Indus., Inc., 2006 U.S. Dist. LEXIS 13612, at * 8-9 (D.N.J. March 29, 2006); see also Jett v. Coletta, 2003 U.S. Dist. LEXIS 16478, at * 5 (D.N.J. Sept. 22, 2003) ("As a federal court sitting in diversity in the State of New Jersey, we must apply New Jersey's choice of law rules."). In the present matter, the case was removed from the Superior Court of New Jersey, Law Division, Mercer County to federal court based on diversity of citizenship. (See Dkt. no. 06-586, entry no. 1). Therefore, the Court finds that New Jersey's rules regarding choice-of-law must be applied.

    1.    **Whether a Conflict Exists**

Under New Jersey's choice-of-law analysis, the Court must first determine whether a conflict exists. See Slater v. Skyhawk Transp., Inc., 77 F. Supp. 2d 580, 589 (D.N.J. 1999). Travelers argues that Pennsylvania law is applicable in the present matter and that Plaintiff's proposed claim is not cognizable under Pennsylvania law. (Travelers' Opp. Br. at 5). Travelers notes "that Pennsylvania law regarding the assertion of a claim against an insurance broker appears to be inconsistent with New Jersey law regarding the ability of an injured party to maintain a cause of action against the producer of an insurance policy to procure appropriate coverage for a tortfeasor." Id. at 10. Further, counsel for Travelers conceded at oral argument that the success of Plaintiff's motion to amend turns on whether New Jersey or Pennsylvania law applies. Plaintiff similarly notes that "[t]here is a conflict between the laws of the two states with respect to this matter." (Pl.'s Reply Ltr. Mem. at 2). However, Plaintiff argues that New Jersey, not Pennsylvania, law applies.

In Pennsylvania, "[t]o be considered a third-party beneficiary . . . it is necessary to show both parties to the contract had an intent to benefit the third party through the contract and did, in fact, explicitly indicate this intent in the contract." Strutz v. State Farm Mut. Ins. Co., 609 A.2d 569, 570 (Pa. Super. 1992). In Strutz, appellants injured in a motor vehicle accident claimed that State Farm's failure to negotiate and settle their claim constituted bad faith. Id. The Superior Court of Pennsylvania held that appellants were not third-party beneficiaries of appellee's insurance policy and therefore, were owed no duty by the insurance company. Id. at 571.

Similarly, the Superior Court of Pennsylvania held in Fizz v. Kurtz, Dowd & Nuss, Inc., 519 A.2d 1037 (Pa. Super. 1987) that appellee insurance agents owed no legal duty based on either a negligence or contract theory to appellant husband whose wife was killed in a motor vehicle

9

accident. 519 A.2d at 1039. In <u>Fizz</u>, appellant husband of a deceased motor vehicle accident victim alleged that appellee insurance agents, as experts in commercial liability insurance, had a contractual duty to give the insureds proper advice regarding liability insurance for a drinking establishment. <u>Id.</u> at 1038. Appellant further alleged negligence in the agents' failure to give such advice. <u>Id.</u> The Court found no basis in law, under any theory, to support appellant's recovery against the insurance agents because the agents owed no legal duty, either in tort or contract, to appellant or his deceased wife. <u>Id.</u> at 1039.

In contrast, New Jersey courts have allowed a plaintiff, injured in an automobile collision, to recover from defendant's insurance agent based on a theory of negligent failure of the agent to procure requested insurance. <u>Eschle v. Eastern Freight Ways, Inc.</u>, 128 N.J. Super. 299 (1974). In <u>Eschle</u>, the Superior Court of New Jersey reasoned that the public policy of New Jersey is "to see that drivers are insured, not only for their own benefit . . . but also to provide a fund from which the damage claims of others may be satisfied." <u>Id.</u> at 302. After examining the foreseeable effects from an insurance broker's actions, the Court held that "[t]he public is a third-party beneficiary of such an agreement." <u>Id.</u> The Court further held that "an injured party acquires an interest in an insurance policy which may be available to cover the accident." <u>Id.</u> at 306. <u>See also</u> <u>Carter Lincoln-Mercury, Inc. v. Emar Group, Inc.</u>, 135 N.J. 182, 196 (N.J. 1994) ("[O]ur cases have held that an insurance broker or agent owes a duty of care not only to the insured with whom the broker contracts but also to other foreseeable parties injured by the broker's or agent's negligence."). Therefore, because the outcome of this matter would differ under Pennsylvania and New Jersey law, the Court finds that a conflict of law exists regarding the liability of insurance brokers and insurance carriers to injured parties.

### 2. Governmental Interest Analysis

After finding that a conflict of laws exists, New Jersey courts follow a governmental interest analysis. See Slater, 77 F. Supp. 2d at 590; Veazey v. Doremus, 103 N.J. 244, 247 (1986). Under this analysis, "the determinative law is that of the state with the greatest interest in governing the particular issue." Slater, 77 F. Supp. 2d at 590 (citing Veazey, 103 N.J. at 248). To determine which state has the greatest interest, the Court must "identify the governmental policies underlying the law of each state and how those policies are affected by each state's contacts to the litigation and to the parties." Id. It is the qualitative, not quantitative, nature of each state's contacts that is essential to the analysis. Id. Specifically, the Supreme Court of New Jersey has identified the following factors for New Jersey courts to consider:

    (a)    the needs of the interstate and international systems;
    (b)    the relevant policies of the forum;
    (c)    the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue;
    (d)    the protection of justified expectation;
    (e)    the basic policies underlying the particular field of law;
    (f)    certainty, predictability and uniformity of result; and
    (g)    ease in the determination and application of the law to be applied.

Maertin, 2006 U.S. Dist. LEXIS 13612, at * 9. In addition, "New Jersey courts generally apply the law of the state in which an injury occurred where one of the parties to the action is also a domiciliary of that state." Slater, 77 F. Supp. 2d at 590.

The underlying substantive tort law of New Jersey serves to protect New Jersey residents injured in the state. As noted in Slater, New Jersey courts have generally applied New Jersey law in cases where New Jersey residents are injured in the state. Therefore, by applying New Jersey law in the present matter where Plaintiff, a New Jersey resident, was injured in an automobile collision in Hamilton, New Jersey, the Court can promote uniformity. Further, New Jersey's interest

in its public policy outweighs any expectation that Pennsylvania law would apply to this related coverage dispute. Also, the parties may have reasonably expected that the law in the state where the injury occurred would apply not only to the underlying tort claim but also to the matter of insurance coverage.

      At oral argument Travelers cited The Pittston Co. v. Sedgwick James of New York, Inc., 971 F. Supp. 915 (D.N.J. 1997) for the proposition that the State in which an insurance broker resides and allegedly commits malpractice has a greater interest than the State in which a loss is suffered. However, the Court finds that Pittston is distinguishable from the present case. In Pittston, the Court had to determine whether the New York or New Jersey statute of limitations period applied. Id. at 922. The Court relied heavily on Heavner v. Uniroyal, Inc., 63 N.J. 130 (1973), a New Jersey Supreme Court case holding that a foreign State's statute of limitations may be applied when certain factors are satisfied. Pittston, 971 F. Supp. at 922 (stating that pursuant to Heavner a foreign State's statute of limitations may be applied when (1) the cause of action arises in another State; (2) the parties are all present in and amendable to the jurisdiction of that state; (3) New Jersey has no substantial interest in the matter; (4) the substantive law of the foreign State is to be applied; and (5) the foreign State's limitation period has expired at the time suit is commenced in New Jersey). The Heavner court noted, however, that "we presently restrict our conclusion to the factual pattern identical with or akin to that in the case before us, for there may well be situations involving significant interests of this State where it would be inequitable or unjust to apply the concept we here espouse." Heavner, 63 N.J. at 141.

      In applying the Heavner factors, the Court in Pittston held that (1) the cause of action arose in New York where the professional was located and performed and where communications

between the parties took place, (2) both parties were amendable to jurisdiction in New York where they communicated and met regarding the insurance policies, (3) New Jersey did not have a sufficiently substantial interest in the professional malpractice claim to warrant applying New Jersey's statute of limitations because "the state interests implicated in an environmental insurance coverage case where the contaminated property is located within the state are distinct from those implicated in a professional malpractice case where the professional at issue resides and performs outside the state," (4) New York substantive law would govern the professional liability issues because under the governmental interest analysis, New York would have a greater interest than New Jersey in regulating a New York insurance broker whose alleged failure to obtain proper insurance took place in New York, and (5) the New York statute of limitations had expired at the time the plaintiff filed the action.  Pittston, 971 F. Supp. at 923-24.

Unlike Pittston and Heavner, the present matter does not involve a statute of limitations issue.  However, similar to Pittston, this action does involve the malpractice of an insurance broker.  Analyzing this case under the Pittston and Heavner analysis, the Court finds that the first factor favors New Jersey law.  Kennel Pak and Genzler & Smith Associates are Pennsylvania corporations.  However, Travelers is a Connecticut corporation with its principal place of business in Connecticut.  Plaintiff, a New Jersey resident injured in New Jersey, claims that Travelers and/or Kennel Pak and Genzler & Smith Associates are liable on an error and omissions theory of liability.  Neither party contends that Connecticut law should apply even though Travelers, the corporation Plaintiff claims assumed responsibility for the excess policy, is incorporated in Connecticut.  Likewise, unlike Pittston, there was no evidence provided to the Court to indicate that communications between Amber Beech and Travelers, Kennel Pak, or Genzler & Smith Associates

were limited to Pennsylvania. Similarly, there is no evidence of meetings held in Pennsylvania regarding the excess policy. Therefore, the Court finds that factor one does not clearly favor Pennsylvania law over New Jersey law.

Similarly, factor two does not clearly implicate the law of Pennsylvania, the state of incorporation of the insurance brokers Kennel Pak and Genzler & Smith Associates. Unlike Pittston, the parties here offered no evidence to indicate they met and communicated regarding the excess policy in Pennsylvania alone. In fact, Plaintiff contends that Travelers, a Connecticut corporation, assumed responsibility for the excess policy issued to Amber Beech, a Pennsylvania corporation. Therefore, the Court finds that factor two does not clearly favor Pennsylvania law.

Under factors three and four of the Pittston and Heavner analysis, New Jersey has a sufficiently substantial interest in the errors and omissions claim in this case. Although a distinction could be drawn in the Pittston case between the environmental insurance coverage claim and the professional malpractice claim, there is no such distinction in the present matter. New Jersey has a sufficiently substantial interest in Plaintiff's errors and omissions claim against Travelers because the state has a strong interest in whether its residents are sufficiently covered by insurance. Plaintiff contended at oral argument that had it not been for Travelers' mistake in omitting the State Farm policy from the Declarations page of the excess policy, Plaintiff would have received additional compensation for his severe injuries under the excess policy. Therefore, the Court finds that although Pennsylvania has an interest in regulating its insurance brokers and preventing malpractice, New Jersey similarly has a significant interest in assuring its residents injured in the state have sufficient insurance coverage regardless of the claim asserted. The Court notes that the fifth factor is not applicable to the present matter because no statute of limitations issue is involved here.

14

Following an analysis of the present matter under the governmental interest analysis and relevant case law, the Court finds that New Jersey has a stronger interest.  Therefore, the Court finding that New Jersey law applies, the proposed claim is not futile as New Jersey law permits a third party to bring suit against an insurance broker.

### b.     Futility Pursuant to New Jersey Law

In analyzing whether Plaintiff's proposed claim is futile under New Jersey law pursuant to a Rule 12(b)(6) standard, the Court finds that Plaintiff's proposed amendment states a claim upon which relief can be granted.  In Eschle, the Superior Court of New Jersey held that an injured third party can be a third party beneficiary to the contract between an insurance broker and the insured. Eschle, 128 N.J. Super. at 302.  Similarly, the Supreme Court of New Jersey found that an insurance broker may owe a duty of care to foreseeable parties injured by the broker's negligence.  Carter Lincoln-Mercury, 135 N.J. at 196.

In contrast, the Superior Court of New Jersey held in Biasi v. Allstate Ins. Co., 104 N.J. Super. 155 (N.J. Super. 1969), a case cited by Travelers, that "public policy does not mandate that the injured party in the accident should be deemed the intended beneficiary of the company's contractual duty to its policyholder to act in good faith regarding settlement."  Id. at 159-60. Although the Court in Biasi held that plaintiff had no legal cause of action against the insurance carrier, the present case is distinguishable from the circumstances in Biasi.  In Biasi, an infant plaintiff was injured in an automobile accident and recovered a judgment in excess of the liability limits of the defendant's insurance policy.  The defendant's insurance carrier paid plaintiff to the limits of its liability policy.  Plaintiff subsequently brought suit against the insurance carrier alleging that the carrier breached the terms of its insurance policy "by its failure to exercise good faith and

15

reasonable care in the preparation, investigation, settlement negotiations, trial and appeal of" the underlying personal action. Id. at 158.

Here, Plaintiff seeks to bring a cause of action against Travelers for failure to meet its obligations to the insured in providing the necessary insurance coverage which resulted in Plaintiff's inability to recover under the excess policy. Contrary to Biasi, Plaintiff in the present matter does not argue that the insurance carrier or broker breached a contractual obligation regarding settlement of the claim. Rather, Plaintiff contends that although Genzler & Smith Associates and Kennel Pak, Inc. were the insurance brokers, Travelers assumed management of the policy prior to the accident. The excess policy was intended for the benefit of those people injured by the insured to such an extent that they were not covered under the general liability limits. Therefore, if Travelers had assumed management of the policy and had failed to meet its obligations in providing excess insurance to the insured, Plaintiff would be a foreseeable injured party whose harm could have been prevented by Travelers. Essentially, as in Carter Lincoln-Mercury, Travelers would owe a duty of care to Plaintiff. Therefore, accepting Plaintiff's allegations as true under Rule 12(b)(6) and given the liberality of pleadings under Federal Rule of Civil Procedure 15, the Court finds that Plaintiff's proposed claim against Travelers is not clearly futile.

## III. CONCLUSION

For the reasons expressed here, the Court finds that Plaintiff's motion is not brought with undue delay, bad faith or dilatory motive. Similarly, the Court finds that Travelers would not be prejudiced if Plaintiff's motion to amend were granted. In applying a choice of law analysis to the issue of futility, the Court finds that New Jersey choice of law rules are appropriate and that a conflict exists between New Jersey and Pennsylvania law. In applying the governmental analysis

used by New Jersey courts, this Court finds that New Jersey has the greater interest in this matter because Plaintiff is a New Jersey resident who was injured in New Jersey.  Finally, the Court finds that under New Jersey law and given the liberality of pleadings pursuant to the Federal Rules of Civil Procedure, Plaintiff's proposed claim against Travelers would not be clearly futile.  Therefore, Plaintiff's Motion to Amend the Complaint is granted. Plaintiff shall file the Amended Complaint no later than April 16, 2007.  Further, Travelers reserves the right to file dispositive motions regarding Plaintiff's newly asserted claim during the course of this litigation.

An appropriate Order accompanies this Memorandum Opinion**.**

**Dated: April 3, 2007**